See also 88 F.Supp. 873.

**JOINT ANTI-FASCIST REFUGEE COMMITTEE v. McGRATH et al.**

**INTERNATIONAL WORKERS ORDER, Inc. v. McGRATH et al.**

**NATIONAL COUNCIL OF AMERICAN-SOVIET FRIENDSHIP, Inc., et al. v. McGRATH et al.**

Civ. Nos. 561–48, 2348–48, 2663–48.

United States District Court
District of Columbia.

April 23, 1952.

568

Joseph Forer and David Rein, Washington, D. C., and Benedict Wolf, of Wolf, Popper, Ross & Wolf, New York City, for Joint Anti-Fascist Refugee Committee.

Arthur Kinoy, of Donner & Kinoy, New York City, and Allan R. Rosenberg, Washington, D. C., for International Workers Order, Inc.

Joseph Forer and David Rein, Washington, D. C., for National Council of American-Soviet Friendship, Inc., and others.

Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey and Joseph Kovner, Attys., Department of Justice, Charles M. Irelan, U. S. Atty., and Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., for defendants McGrath and others.

MORRIS, District Judge.

In each of these cases the then Attorney General of the United States included the complaining organizations in a list of organizations designated by him as communist, and furnished by him to the Loyalty Review Board of the United States Civil Service Commission. He based his authority for this action upon certain provisions in Part III, Section 3, of Executive Order No. 9835, issued by the President March 21, 1947.[1] Each of the plaintiff organizations filed these actions, seeking a judgment declaring such action of the Attorney General to be invalid, and for injunctive relief in connection therewith. In each of these cases this Court dismissed the complaint upon the ground that the complaining organizations did not suffer such legal injury as would enable them to maintain the action. Upon appeal in each case, the United States Court of Appeals for the District of Columbia affirmed the action of this Court. Upon writ of certiorari, each case was brought before the Supreme Court, and in each it was held that the dismissal of the complaints was erroneous, and the cases were remanded for further proceedings. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817. The cases were decided by a divided Court, five justices constituting the majority, three dissenting, and one took no part. For the five justices constituting the majority, Mr. Justice Burton announced the judgment of the Court and delivered an opinion, in which Mr. Justice Douglas joined. It is clear that the majority de-

---

1. "Part III—Responsibilities of Civil Service Commission

\* \* \* \* \*

"3. The Loyalty Review Board shall currently be furnished by the Department of Justice the name of each foreign or domestic organization, association, movement, group or combination of persons which the Attorney General, after appropriate investigation and determination, designates as totalitarian, fascist, communist or subversive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of government of the United States by unconstitutional means.

"a. The Loyalty Review Board shall disseminate such information to all departments and agencies." 3 CFR, 1947 Supp., pp. 129, 131, 12 Fed.Reg. 1935, 1938, 5 U.S.C.A. § 631 note.

cided that the complaining organizations had legal rights which gave to each of them standing to complain of the alleged injuries. It is equally clear" that, while four of the majority, including Mr. Justice Douglas, expressed in opinions that the action complained of could not be legal and valid in the absence of adequate notice to the complaining organizations and a hearing before they were designated as communist organizations by the Attorney General, the majority of the Court did not so determine, Mr. Justice Burton taking the position that consideration of this must await a determination by the District Court upon consideration of the basis upon which the Attorney General took the action complained of. The three dissenting justices did not consider that the complaining organizations suffered any legal injury which gave them a standing to maintain these actions, and it, of course, followed that there was no necessity that adequate notice be given and hearing had before the action complained of was taken.

Upon remand, the then Attorney General filed answer, admitting certain of the allegations of the complaint, denying others, and asserting that he was without information and belief as to other allegations. As a further defense, the Attorney General asserted that the designation of the complaining organizations was made after appropriate investigation and determination, and was based upon information in the possession of the Attorney General, including confidential investigative reports of the Federal Bureau of Investigation, and upon the recommendations of the Solicitor General, the Assistant Attorneys General, the Assistant Solicitor General, and a careful study of all by the Attorney General. That designation was first made by Tom C. Clark, as Attorney General of the United States, and after re-examination, the said

designation has been affirmed and maintained by J. Howard McGrath, successor to Tom C. Clark as Attorney General of the United States. Subsequently the plaintiffs in each case renewed their motion for preliminary injunction and moved for judgment on the pleadings, or in the alternative for summary judgment. Before hearing was had thereon, the defendants in each case moved for summary judgment, based upon the pleadings and an affidavit of J. Howard McGrath, Attorney General of the United States, filed with said motions.

The affidavits, though in each case differing in some respects as to details, set forth in substance the method of investigation and determination referred to in the answer, and state that public policy and national security will not permit the disclosure of the contents of many confidential reports, nor. the presentation by way of testimony through witnesses of any of the confidential information contained in such reports, since such revelation would be detrimental to the national security, and would render valueless for future use confidential sources of information essential to the protection of our national security. The affidavits further state, however, that, within the limits of national security, the Attorney General submitted a summary of information upon which, in part, the designation of the complaining organizations, pursuant to Section 3, Part III, of Executive Order 9835, was based. He stated that this summary does not reflect the complete factual basis upon which the determination rests, but only that part which can be disclosed without jeopardizing the national security. He states that such information is offered to satisfy the Court that the designation complained of was not arbitrary, capricious or without foundation in fact. An abbreviated resume of the summary contained in each affidavit appears in the margin.[2]

2. In each affidavit there are certain statements concerning the character of the Communist Party of the United States, its objectives and methods of operation. Thereafter each affidavit summarizes the information referred to by the Attorney General as such information relates to each of the three complaining organizations.

Joint Anti-Fascist Refugee Committee. Certain statements are made concerning the organization of the Committee, asserting that it was organized by order of the Communist Party of the United States, and controlled by that Party, which supervised its funds and which chose its officers, and to which reports of its actions were made; the Communist

The plaintiffs in each case moved to strike the affidavit filed by the Attorney General upon the ground that it does not meet the requirements of Rule 56(e) of

Party has contributed money to the Committee, or to activities sponsored by the Committee; the Committee has received full support from the official publications of the Communist Party; the Committee has never deviated from the position advanced and proposed by the said Communist Party; the Committee is an important organ of the Communist Party in carrying out the subversive goals of the communist movement; the ostensible purpose of the Committee to aid individuals who fled from Spanish Republican Government is but a front, behind which the Committee supports and assists, as refugees from Fascist persecution, secret agents of the Government of the Soviet Union; and the Committee was organized by the Communist Party with the real, specific and undisclosed purpose of bringing such agents into the United States and supporting them during their stay here, where they assisted in supervising the subversive activities of the Communist Party.

International Workers Order, Inc. The IWO was organized under the direction and with the assistance of the Communist Party. The proposal for its formation, initially made by the Communist Party, was the subject of reports of the Central Committee and Politbureau of the Communist Party, which were considered and approved by the Communist International at Moscow. Seven of the nine incorporators signing the certificate of incorporation were members of the Communist Party. Instructions were issued by the Central Committee of the Communist Party for assignment of Communist Party personnel to build the IWO, and accordingly Communist Party members were selected to circulate applications for membership in and to organize branches or lodges of the IWO. Youth sections in the IWO were organized by members of the Young Communist League, the youth organization of the Communist Party, which in turn was a section of the Young Communist International, the Communist International's organization for the communist youth movement of the world. From its inception the IWO has been governed by policies and principles decided or dictated by the Communist Party, which has maintained representatives in that organization to direct and supervise its activities, and which representatives have made reports to the Communist Party respecting activities in furthering the aims and principles of the

Communist Party. Said party has maintained control over the selection and removal of officers of the IWO. In its official publications and by authorized statements of its officials, the Communist Party has proclaimed ownership and control over the IWO. Notwithstanding its obstensible declared purpose, the IWO has been operated and employed to receive and disseminate communist doctrine, literature and propaganda. The IWO was organized and used by the Communist Party as one of its major "transmission belts," by which it sought and continues to seek, within the United States, to reach the so-called "mass of workers" to indoctrinate them with Communist Party principles for the ultimate purpose of recruiting them as Communist Party members, or as supporters of or sympathizers with Communist Party principles and doctrine. The IWO has, by various means stated in the affidavit, aided the Communist Party and its official publications financially. Throughout its existence the IWO never knowingly has deviated from the fundamental principles and policies of the Communist Party, the Government and Communist Party of the Soviet Union, the Communist International, the Communist Information Bureau, and other leaders of the world communist movement. Whenever such views and policies have conflicted with the position taken by the Government of the United States, the IWO has opposed the position of the United States. The affidavit enumerates fourteen instances or illustrations wherein the IWO has supported policies favored by the Communist Party of the Soviet Union which were opposed to the policies of the United States.

National Council of American-Soviet Friendship, Inc. The National Council of American-Soviet Friendship, Inc., was organized under the direction of the Communist Party after the subject of forming such organization had been discussed at a meeting of the Politbureau and top Executive Committee of the Communist Party. The organization of the National Council was also discussed at a number of meetings of the National Committee of the Communist Party; the Communist Party has appointed the leaders of the National Council; the National Council sought advice and instructions from the Politbureau of the Communist Party; problems of the National Council were discussed at Politbureau meetings, and its decisions regarding the National Council were complied with by the

the Federal Rules of Civil Procedure, 28 U.S.C.A., with reference to affidavits submitted on a motion for summary judgment in that such rule requires—

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

and in that such rule further requires—

"Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

Plaintiffs also oppose the granting of the summary judgment sought by the defendants, and the defendants oppose the granting of the judgment on the pleadings, or in the alternative summary judgment, sought by the plaintiffs, and also oppose the granting of injunctive relief *pendente lite* sought by the plaintiffs. A hearing was had upon all motions upon argument of counsel and submitted briefs.

 In the view of the defendants, the critical question is whether or not the Attorney General had such information at the time of the designations complained of that his action in making such designations was reasonable and, therefore, not arbitrary and capricious. Entirely apart from the constitutional question of whether or not adequate notice and a hearing was requisite in a case such as this in order to afford due process of law, a question which will be dis-

cussed later, it might well be that an administrative officer of the Government could make a determination based on information upon which he could reasonably rely without being arbitrary or capricious, even though such information was not of the character ordinarily admissible in evidence in the trial of a judicial proceeding. Presumably it is the task of this Court, under the mandate of the Supreme Court, to determine what such basis of action the Attorney General had for the designations here complained of, and it may be that, in the course of that inquiry, recourse must be had to documents, reports, and similar data that would not ordinarily be admissible in proof of the substantive facts to which they relate. But, to say that, is not to say that, in disregard of the requirements of the applicable rule respecting summary judgments, the business of this Court in these cases is terminated by an affidavit of the Attorney General which in effect says that he had information which he believed to be true, and which convinced him that he did not act arbitrarily and capriciously. The only way that I know in which the matter can be properly dealt with is to receive evidence concerning the factual matters upon which the Attorney General based his action, and to determine whether, in the light of such evidence, there was a reasonable basis for his reaching the conclusion which he did. The affidavit filed by the Attorney General, stating, as it does, factual matters which he believed to be true, and which, if true, would undoubtedly justify the conclusion which was reached,

National Council in the strictest party-line sense; and the financial affairs of the National Council were supervised by the Communist Party. The affidavit states numerous methods by which aid to the National Council was given by the Communist Party, such as distribution of advertising matter in regard to functions of the National Council, publicity, sale of tickets, recruiting of volunteers, assignment of Communist Party members to cooperate. Numerous instances are stated with respect to methods by which the National Council gave aid and support to the Communist Party, such as urging close bonds within America between the United States and the Soviet

Union, and the sending to Communist Party Headquarters of personnel to aid in addressing letters and mailing material. Throughout its existence the National Council has never knowingly deviated from the views and policies of the Communist Party, or the leaders of the world communist movement. Whenever such views and policies have conflicted with the position taken by the Government of the United States, the Council has opposed the position of the United States. Five instances are given in which the Council has supported the position of the Communist Party, which has been in opposition to the policy of the United States.

might well be treated as an amendment to his answer to the end that all permissible and admissible data relating to such factual matters could be considered by the Court. Motions of defendants for summary judgment must, therefore, be denied.

With respect to the motions of the plaintiffs for a judgment on the pleadings, or in the alternative for summary judgment, the view of the plaintiffs is that the action taken by the Attorney General in making the designations complained of could not be valid, regardless of the factual basis which he had for taking such action, in the absence of adequate notice to the complaining organizations and a hearing which would afford them the protection of the constitutional requirement of due process. Certainly four of the justices participating in the decision in these cases in the Supreme Court agreed with this contention, but, equally as certain, that was not the action of the majority of the Court. As stated earlier in this memorandum, that question was left, so far as the action of the Supreme Court is concerned, for consideration in the light of action which might be taken by this Court after it had examined into and determined the factual basis upon which the designations complained of were made by the Attorney General. With respect to the admitted fact that there was no adequate notice or hearing, the cases are now in precisely the same posture that they were when considered by the Supreme Court. That Court did not see fit to deal with that question then, and I see no reason why this Court should deal with it now before it has had opportunity to examine into the factual basis upon which the designations complained of were made. The motions of the plaintiffs for judgment on the pleadings, or in the alternative for summary judgment are, therefore, denied.

With respect to the renewed motions of the plaintiffs for temporary injunctive relief *pendente lite,* it must be considered that the designations complained of, and concerning which plaintiffs claim that irreparable injury threatens, occurred in the year 1947. From the assertions made by plaintiffs, they have already suffered substantially all of the injury which they claim resulted from the action, the legality of which is to be in these cases determined. It does not appear that injunctive relief, if now granted, would, or could, afford to them the protection which injunctive relief is ordinarily intended to afford, and it does appear that at this late date, substantially five years after the action complained of, its effect would be to bring about a change in governmental procedures which have been in operation for a long period, and which ought not to be altered unless and until it is determined that the action in question is illegal and invalid. Balancing the equities of the parties and the public interest, I must conclude that the motions for injunctive relief *pendente lite* should be denied.

Counsel will prepare and submit appropriate orders to carry these decisions into effect.